# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| AK STEEL CORPORATION, | ) |
| | ) |
|             **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 15-9260-CM-GEB |
| | ) |
| PAC OPERATING LIMITED PARTNERSHIP, et al., | ) ) ) |
| | ) |
|             **Defendants.** | ) |
| | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on the putative third-party defendants' Motions to Strike the Third-Party Complaints (**ECF Nos. 32, 36**). Seeking to strike the pleadings are putative third-party defendants 1) Dial Corporation and 2) Henkel Corporation (ECF No. 32); and 3) Arkema, Inc. (ECF No. 36). On September 28, 2016, the Court conducted an in-person hearing on the motions. Plaintiff AK Steel and third-party defendant Contech Engineering Solutions LLC ("Contech") appeared through counsel, Barry Pickens and Michael Hockley. Defendants/third-party plaintiffs PAC Operating Limited Partnership ("PAC") and Palmtree Acquisition Corporation ("Palmtree") appeared through counsel, David Erickson and Anthony Martinez. Third-party defendant Arkema, Inc. appeared through counsel, Anthony Rupp and David Parsells. Third-party defendants Dial Corporation and Henkel Corporation appeared through counsel, Alan Rupe and Kyle Malone. After review of the parties' briefs and hearing arguments of counsel, the Court

announced its ruling at the September 28, 2016 hearing.  This order memorializes the oral ruling and **DENIES** both motions for the reasons set forth below.

## I.     Background[1]

This action stems from environmental contamination of industrial property formerly owned by Santa Fe Land Improvement Company ("SFLIC") in Topeka, Kansas (the "Site").  Ownership over the property has varied over the past several decades, leading to apparent confusion over the appropriate parties to this action.

### A.     Property Dominion

SFLIC owned the property beginning in 1906.  In 1955, while the surrounding property continued to be owned by SFLIC, it sold a portion of the property to plaintiff AK Steel's predecessor, Armco Steel Company.  From 1955 to 1958, SFLIC leased a portion of the property it retained to Turco Products, Inc. ("Turco") for use as a chemical manufacturing plant.  That same portion of the property was leased from 1958 to 1965 by Reid Supply Company, again for use in chemical manufacturing.  At some point in 1978, SFLIC transferred its property holdings to Armco.  The ownership or lease of the property from 1965 to 1978 is unclear from the pleadings, but AK Steel contends the entirety of Turco's and Reid's chemical operations took place under SFLIC's ownership of the Site.

---

[1] The information recited in this section is taken from the pleadings and from the briefs regarding the Motions to Strike the Third-Party Complaints.  This background information should not be construed as judicial findings or factual determinations.

After review of the pleadings and motion briefing, the precise path of ownership remains vague. However, the parties to this lawsuit and their relationship to the previous owners of the industrial site may be condensed to the following:

- Plaintiff AK Steel – successor to Armco Steel Company

- Former defendants Prologis, Inc., and Prologis, L.P. (collectively "Prologis") – potential successors to SFLIC

- Defendant/third-party plaintiff PAC – successor to SFLIC

- Defendant/third-party plaintiff Palmtree – general partner of PAC, successor to SFLIC

- Putative third-party defendants Henkel and Arkema – PAC claims each assumed the liabilities of Turco

- Putative third-party defendant Dial – acquired by Henkel, potential successor to Turco

- Third-party defendant Contech – current owner of the Site

B.   **Discovery of Contamination**

At some point prior to 2004, the Kansas Department of Health and Environment ("KDHE") identified environmental contaminants in the soil and groundwater at the Site. In 2004, AK Steel, along with Contech, entered into a Consent Order with the KDHE for performance of a comprehensive investigation and corrective action study of the Site. In 2014, AK Steel entered into a Consent Agreement and Final Order with KDHE for performance of corrective actions at the Site. (Amd. Compl., ECF No. 5 at 2.) Because AK Steel believed Prologis to be a successor to SFLIC, in September 2014, AK Steel and Prologis entered into a one-year Tolling Agreement concerning the consent orders. The Agreement addressed the tolling of any statute of limitations potentially applicable to any

3

later action brought by AK Steel against Prologis "and its respective predecessors, successors, subsidiaries and affiliates, including specifically but not limited to PAC." (Amd. Compl., ECF No. 5 at 2-3.)

### C. Procedural History

In September 2015, AK Steel filed this lawsuit against two Prologis defendants seeking to recover costs for environmental cleanup at the Site, pursuant to Sections 107(a)(2) and 113(f)(3)(B) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended ("CERCLA").[2] In October 2015, AK Steel amended its complaint (ECF No. 5) to name as defendants PAC and Palmtree, while terminating the Prologis defendants from the case. AK Steel seeks to recover the response costs it expended, and will expend in the future, and makes claims of common law unjust enrichment against Defendants, as successors-in-interest to SFLIC.

In December 2015, defendants PAC and Palmtree (collectively "PAC") filed Counterclaims against AK Steel (ECF No. 8, 9) and a Third-Party Complaint (ECF No. 10) against Contech, asserting Contech is liable for contribution regarding any judgment against PAC. Contech filed its Answer and Counterclaim (ECF No. 15) in March 2016.

### D. Putative Third-Party Defendants

Also in March 2016, Prologis (PAC) sent demand letters to Arkema, Henkel, and Dial.[3] PAC claims Henkel and Arkema each assumed the liabilities of Turco Products

---

[2] 42 U.S.C. §§9607(a)(2) and 9613(f)(3)(B).
[3] Letter from Prologis to Henkel (Mar. 2, 2016), attached as Ex. A to ECF No. 49; Letter from Prologis to Arkema (Mar. 2, 2016), attached as Ex. A to ECF No. 37. *See also* emails from PAC counsel to counsel for Henkel/Dial (June 22, 2016), attached as Ex. C to ECF No. 49 at 508-11;

4

related to the 1955 lease, and Dial is liable through Henkel's acquisition of Dial.  The letters informed the three entities that PAC intended to file third-party claims by the Court-imposed deadline if the parties could not reach an agreement on PAC's claims prior to that time.  Henkel and Dial did not respond to PAC's demand.  Arkema's general counsel responded by letter, denying Arkema's successor liability for Turco and explaining its predecessor was a separate entity unrelated to the Turco corporation which leased property at the Site.[4]

E. **Current Posture**

After holding a scheduling conference, the Court issued a Scheduling Order (ECF No. 21) on May 12, 2016.  That order established a June 23, 2016 deadline for motions seeking amendment of the pleadings or addition of parties.  Rather than first seeking leave to do so, on June 23, 2016, PAC filed Third-Party Complaints against Arkema (ECF No. 25), Henkel (ECF No. 26), and Dial (ECF No. 27).  To date, AK Steel and PAC exchanged initial disclosures, and PAC produced initial disclosures to all named third-party defendants, but discovery has not otherwise progressed.  At the parties' joint request, the responsive pleading deadline for Henkel, Dial, and Arkema was stayed (ECF No. 54) and additional scheduling deferred (ECF No. 47) pending resolution of the putative third-parties' requests to strike PAC's Third-Party Complaints.

---

emails from PAC counsel to counsel for Arkema (June 23, 2016), attached as Exs. A-C to ECF No. 48.
[4] Letter from Arkema to Prologis (Apr. 22, 2016), attached as Ex. B to ECF No. 37.

## II.     Motions to Strike the Third-Party Complaints (ECF Nos. 32, 36)

Although the parties disagree on the various motives behind the filing, the parties agree the Third-Party Complaints against Arkema, Henkel, and Dial were filed without the leave required by Fed. R. Civ. P. 14.  Within days of one another, all three named third-party defendants filed motions to strike the pleadings (ECF Nos. 32, 36).

Henkel, Dial, and Arkema argue PAC violated Rule 14 and the Rule 16 Scheduling Order by failing to obtain leave before filing the Third-Party Complaints, and this alone justifies striking the pleadings.  They assert the addition of the third-party defendants will prejudicially complicate the case, confuse the issues, and significantly delay trial.  Because they contend PAC violated the Scheduling Order, they seek monetary sanctions under Rule 16(f).  Additionally, Arkema claims it has been prejudiced because the case has been in litigation for nearly a year, and it has been excluded from the process thus far; therefore losing the opportunity to defend itself.

In response, PAC argues although it technically failed to seek leave of Court prior to filing, it did file the Third-Party Complaints by the deadline to add parties set in the Scheduling Order.  It professed confusion by the discussion held during the scheduling conference, and asserts the Court can allow the filings in its discretion.  Out of an abundance of caution, PAC made an oral motion, at the September 28 hearing, asking the Court for leave to file its Third-Party Complaints.  PAC claims Rule 14's requirement for leave is not intended to protect the putative third-party defendants; rather, it serves to safeguard the parties currently in the case.

Neither plaintiff AK Steel nor third-party defendant Contech filed briefs regarding the motions to strike. Both parties were present at oral argument, but neither presented arguments on the motions.

A. **Legal Standards**

Fed. R. Civ. P. 14 provides the standard for filing a third-party complaint, while Rule 16 provides general standards for pretrial management. Both rules are implicated by the parties' briefing, with Rule 14 providing the starting point.

1. **Fed. R. Civ. P. 14**

Fed. R. Civ. P. 14(a)(1) allows a defendant to bring a nonparty into an action if the nonparty may be liable to the defendant for all or a part of plaintiff's claim.[5] If the defendant wishes to file its third-party complaint within 14 days after serving its original answer, it may do so as a matter of right. However, after the 14-day period, Rule 14 *requires* the third-party plaintiff to file a motion for leave of court.[6]

"Rule 14 was designed to reduce multiplicity of litigation and permit a disposition in the main action of a claim for indemnity against a third party;"[7] therefore, courts construe the rule liberally.[8] But the principle of secondary or derivative liability is central to its application. Rule 14 is typically applied in two situations: (1) where a

---

[5] *Digital Ally, Inc. v. Z3 Tech., LLC*, No. 09-2292-KGS, 2011 WL 723039, at *3 (D. Kan. Feb. 23, 2011) (citing Fed. R. Civ. P. 14).
[6] Fed. R. Civ. P. 14(a)(1).
[7] *Digital Ally, Inc.,* 2011 WL 723039, at *3 (citing *Thomas v. Malco Refineries, Inc.,* 214 F.2d 884, 886 (10th Cir. 1954); *Admin. Comm. of Wal-Mart Associates Health & Welfare Plan v. Willard*, No. 02–2571–KHV-DJW, 216 F.R.D. 511, 513 (D. Kan. 2003)).
[8] *Lansing Trade Grp., LLC v. OceanConnect, LLC*, No. 12-2090-JTM-GLR, 2013 WL 120158, at *1 (D. Kan. Jan. 9, 2013) (citing *United of Omaha Life Ins. Co. v. Reed,* 649 F.Supp. 837, 841 (D.Kan.1986)).

tortfeasor is seeking contribution from a joint tortfeasor, and (2) where an insured is pursuing indemnification.[9]

### 2. Factors for Consideration of Third-Party Complaint

Whether to allow filing of a third-party complaint under Fed. R. Civ. P. 14 is "a matter within the sound discretion of the Court."[10] When exercising this discretion, some of the relevant factors considered by the court include:

> (1) the benefits of a single action versus prejudice to the other party and confusion, (2) the timeliness of the request and prejudice to the plaintiff in delay, (3) whether the main case would unnecessarily expand in scope, (4) whether impleading new parties would unduly delay or complicate the trial, and (5) whether the third-party plaintiff's motion states sufficient grounds for the court to evaluate the propriety of third-party complaints.[11]

But unless the filing will prejudice another *party*, a court should generally allow it.[12]

### 3. Pretrial Management and Discretion of the Trial Court

Fed. R. Civ. P. 16 sets out requirements for pretrial conferences and issuance of scheduling orders. This rule requires a pretrial scheduling order to place limits on the time to join other parties and amend the pleadings.[13] As part of the pretrial management of its cases, Rule 16(f) allows the Court to, on motion or on its own, "issue any just orders . . . if a party or its attorney . . . fails to obey a scheduling or other pretrial order."[14]

---

[9] *Id*. at *2 (citing *Willard,* 216 F.R.D. at 513).
[10] *Id*. at *1-*2 (citing *Willard,* 216 F.R.D. at 514; *Clark v. Assocs. Commercial Corp.,* 149 F.R.D. 629, 635 (D. Kan. 1993); s*ee also First Nat'l Bank of Nocona v. Duncan Sav. & Loan Ass'n*, 957 F.2d 775, 777 (10th Cir. 1992).
[11] *Willard*, 216 F.R.D. at 514 (D. Kan. 2003) (citing *City of Wichita, Ks. v. Aero Holdings, Inc.*, No. 98-1360-MLB-KMH, 2000 WL 1480490, at *1 (D. Kan. Apr. 7, 2000)).
[12] *Lansing Trade Grp., LLC*, 2013 WL 120158, at *1 (emphasis added).
[13] Fed. R. Civ. P. 16(b)(3)(A).
[14] Fed. R. Civ. P. 16(f)(1)(C).

In addition to the latitude in pretrial management afforded by Rule 16, "[d]istrict courts generally are afforded great discretion regarding trial procedure applications (including control of the docket and parties), and their decisions are reviewed only for abuse of discretion."[15] Even when a party has run afoul of the rules, the Court maintains the inherent ability to administer its cases, "governed not by rule or statute, but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."[16] As noted by the Tenth Circuit Court of Appeals, "[o]ur justice system has a strong preference for resolving cases on their merits whenever possible,"[17] particularly in the absence of bad faith by an offending party or prejudice to a non-moving party.[18]

### B. Analysis

Two primary arguments are submitted by the putative third-party defendants in favor of striking the Third-Party Complaints: one based on the procedural deficiency of PAC's filing, and the second based upon the merits of PAC's claims. Each is discussed below.

#### 1. Failure to Seek Leave

Henkel, Dial, and Arkema cite primarily non-binding case law from other districts for the proposition that the Third-Party Complaint *must* be stricken simply because PAC

---

[15] *Garza v. Davis*, 596 F.3d 1198, 1205 (10th Cir. 2010) (citing *United States v. Nicholson,* 983 F.2d 983, 988 (10th Cir.1993) (internal citations omitted).
[16] *United States v. Schneider*, 594 F.3d 1219, 1226 (10th Cir. 2010) (noting "[t]he power of district courts to manage their dockets is deeply ingrained in our jurisprudence") (citing *Link v. Wabash R.R. Co*., 370 U.S. 626, 630–31 (1962)).
[17] *Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1319 (10th Cir. 2011).
[18] *See, e.g.* sources cited *infra* note 22.

failed to seek leave. One distinguishable Kansas federal court case cited by all three parties in support of their motions is *Ybarra v. Swanson*.[19] Although the third-party defendants are correct the pleading was stricken in that case, the analysis by the Court was not so simplistic.

Unlike the situation before us, in *Ybarra*, the Court noted not only the failure to seek leave prior to filing, but struck the third-party complaint on its merits.[20] Finding the impleader of a third-party defendant "is only available against a person ... who is or may be liable to *the third-party plaintiff*," the Court struck the third-party complaint. Defendant attempted to "implead [the putative third-party defendant] because she [was] allegedly liable to plaintiff Ybarra, not because she is derivatively liable to" defendant.[21] Here, the putative third parties oppose the pleading primarily on procedural grounds, without denying the potential derivative liability of Turco's successors to defendants.

Henkel, Dial, and Arkema argue the failure to obtain leave divests this Court of its discretion to accept the pleadings and is therefore fatal to the filing of the third-party complaints. The Court disagrees. In some circumstances, courts accept pleadings despite clear procedural deficiencies when justice so requires.[22] Furthermore, the Court clearly

---

[19] *Ybarra v. Swanson*, No. 02-1368-WEB, 2003 WL 21939022, at *3–4 (D. Kan. July 21, 2003).
[20] *Id.* at *4.
[21] *Id.* (emphasis in original).
[22] *See, e.g.*, *Chubb v. Brownback*, No. 14-CV-03227-DDC-DJW, 2016 WL 5410615, at *4 (D. Kan. Sept. 28, 2016) (construing plaintiff's untimely motion to amend as a motion to file out of time, and considering whether plaintiff demonstrated excusable neglect under Rule 6(b)(1)(B); his good faith in filing the motion, and the potential prejudice to defendant); *Pledger v. Life Care Ctr. of Kansas City*, No. 15-9212-JAR-GEB, 2016 WL 893752, at *2 (D. Kan. Mar. 8, 2016) (invoking Rule 16(b)(4) to consider good cause, when a proposal to amend a pleading under Rule 15 was offered after the deadline set by the scheduling order, and finding good cause to allow amendment despite plaintiff's initial failure to file a motion to amend considering the lack of prejudice to defendant, and no bad faith on part of plaintiff). *See also Intellipayment, LLC. v. Trimarco*, No. 15-CV-01566-JFB-GRB, 2016 WL 1239261, at *3 n.2 (E.D.N.Y. Mar.

possesses the discretion to manage its docket, whether it be through the case management allowed under Rule 16 or its inherent powers discussed above.[23] As explained by the United States Supreme Court,

> It is too late in the day and entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of such mere technicalities. The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.[24]

In that spirit, although this Court certainly does not propose any party wishing to file a pleading under Rule 14 should bypass the process specified therein, it does find requiring PAC to do so, at this juncture, would be an exercise in futility, given the extensive briefing and hearings already held. In direct contravention of Rule 1's directive to "secure the just, speedy, and inexpensive determination" of this proceeding, a motion for leave would frankly only add to the cost and delay of the case. Additionally, because the addition of parties was discussed at the scheduling conference, the Court acknowledges it may have unintentionally misled PAC counsel into filing the pleadings themselves rather than seeking leave; therefore it finds no blatant or intentional disregard for the rules in PAC doing so.

Despite the procedural concerns, all parties had adequate opportunity to present the merits of their Rule 14(a) arguments in both their briefing and during oral argument. Notably, the same arguments the putative third-party defendants make are the very same

---

29, 2016) (using its discretion to excuse defendant's failure to obtain leave of the court under Rule 14 to file his third-party complaint); *Nat'l Labor Coll., Inc. v. Hillier Grp. Architecture New Jersey, Inc.*, No. DKC 09-1954, 2012 WL 3264959, at *3 (D. Md. Aug. 9, 2012) (finding "the failure to file a motion for leave does not deprive the court of discretion").
[23] *See* discussion *supra* section II.A.3.
[24] *Foman v. Davis*, 371 U.S. 178, 181–82 (1962) (internal citations omitted).

arguments which would have been made if PAC had filed its motion to amend. The Court considers those arguments below and does not take the third party defendants' positions lightly. In an attempt to cure its procedural defect, PAC submitted an oral motion for leave to file its third-party complaints during the hearing (albeit clearly belated). In its inherent discretion, the Court waives the procedural deficiency of PAC's filings in this unique circumstance, accepts PAC's oral motion, and considers the merits of the pleadings in light of the parties' opportunities to address the Rule 14 factors.

### 2. Merits

As the Tenth Circuit Court of Appeals stated, and this Court reiterated, "if impleading a third-party defendant would require the trial of issues not involved in the controversy between the original parties without serving any convenience, there is no good reason to permit the third-party complaint to be filed."[25] Here, impleading the third-party defendants will add the issue of whether each is the proper successor in interest to Turco. But the ownership and/or leasehold of the Site is ultimately the issue in this contribution case, and will be regardless of the addition of Henkel, Dial, or Arkema.

Considering the Rule 14 factors cited above, the Court finds the balance weigh in favor of allowing the filing of the Third-Party Complaints. The spirit and intent of Rule 14 is to avoid multiple lawsuits.[26] In this instance, the parties admit PAC may be entitled to file separate actions against Henkel, Dial, and Arkema if their motions are granted. If

---

[25] *Digital Ally, Inc.*, 2011 WL 723039, at *6 (citing *U.S. Fid. & Guar. Co. v. Perkins,* 388 F.2d 771, 773 (10th Cir. 1968) (internal quotations and edits omitted)).
[26] *City of Wichita, Ks.*, 2000 WL 1480490, at *1 (quoting *United States v. Accord,* 209 F.2d 709, 712 (10th Cir.1954), cert. denied, 347 U.S. 975 (1954) (noting the purpose of Rule 14 is "to accomplish in one proceeding the adjudication of the rights of all persons concerned in the controversy and to prevent the necessity of trying several related claims in different lawsuits").

PAC chose to file separately, those suits could very well be subject to consolidation under Rule 42.[27] Therefore, the economy and convenience of combining all contribution claims into a single action weigh heavily in favor of allowing the third-party claims to go forward.

Additionally, although Henkel, Dial, and Arkema each argue the case would be impermissibly complicated and delayed by the filing of the third-party complaints, the Court is not swayed by such threats, not to mention the unsurprising lack of opposition by the plaintiff who filed the case. Absent prejudice to the parties *present* in the action (excluding the putative third-party defendants), it is difficult to demonstrate true prejudice to the putative third parties who remain subject to separate suit. Furthermore, all three were notified of potential claims by PAC in March 2016, and the claims against them were filed 90 days later. Henkel and Dial did not respond to PCA's demand letter. Although Arkema may have a viable defense to any claims on the basis that it is not a successor to Turco, there is not adequate evidence before the court at this time to make such a determination, and Arkema certainly has the opportunity to present such information through either an early or later dispositive motion. Absent opposition by the plaintiff, and acknowledging the claims could be filed separately, the Court finds no prejudice in allowing the third-party claims to proceed in this action.

Unfortunately, the putative third-party defendants chose to rely heavily on *City of Wichita, Ks. v. Aero Holdings, Inc.*,[28] a 1998 CERCLA action in which the Court denied

---

[27] This Court does not speculate or offer any opinion on whether such a request for consolidation would be *granted*, only that the parties could so *request*.
[28] *City of Wichita, Ks. v. Aero Holdings, Inc.*, No. 98-1360-MLB-KMH, 2000 WL 1480490, at *1 (D. Kan. Apr. 7, 2000).

13

the defendants' request to file third-party complaints. But the procedural posture and relief sought in that case are distinct from the facts at hand. In the *City* case, the Rule 14 motion was filed nearly 16 months after defendants' initial answers, and the defendants sought to add more than 700 third-party defendants. When defendants filed their motion, significant written discovery had been completed and litigated; depositions had been taken and scheduled; the parties were nearing their expert disclosure deadlines and at least one summary judgment motion had been filed. *City of Wichita* was a highly disputatious case, with more than 400 documents filed prior to defendants' request to add parties. The plaintiff opposed the motion, and the Court found the "current case management schedule would be brought to an abrupt halt if 700–plus third-party defendants were added" to the case and found the "delay would be unfairly prejudicial to the City," the plaintiff in that case.

Conversely, in the instant case, very little if any discovery has occurred, and the plaintiff does not oppose the addition of the three parties. PAC filed the Third-Party Complaints six months after filing of their initial Answers. Due to extensive pleading practice outside the current issue, there has been little significant progress in this case, and with a current trial setting one year away, the Court sees adequate opportunity for significant discovery by all parties and for the putative third-party defendants to quickly get up to speed, or to rid themselves of this case, if applicable. Furthermore, the Court has the ability to keep a close reign on discovery, and intends to do so in order to keep the case on a forward trajectory.

### 3. Sanctions

Fed. R. Civ. P. 16 requires the Court to order a party and/or its attorney to pay the reasonable expenses—including attorney's fees—incurred because of any noncompliance with a scheduling order. However, Rule 16 allows the Court discretion to deny sanctions if the "noncompliance was substantially justified or other circumstances make an award of expenses unjust." Finding no blatant disregard for the rules, as discussed above, the Court, in its discretion, finds sanctions unwarranted.

**IT IS THEREFORE ORDERED**, as set forth above, that the Motions to Strike the Third-Party Complaints (**ECF Nos. 32, 36**) filed by third-party defendants Dial Corporation, Henkel Corporation, and Arkema, Inc. are **DENIED**.

## IV. Scheduling

The Court previously issued modifications to the schedule (ECF Nos. 47, 54) based upon issuance of this Order. On review of those orders, and after discussion at hearing, the Court orders the following clarification to the schedule:

1. Henkel, Dial, and Arkema must answer or otherwise respond to the Third-Party Complaints no later than **November 23, 2016**.

2. Order, ECF No. 60, established a deadline of 14 days after the Court's ruling on the Motions to Strike for the third-party defendants' submission of initial disclosures. That 14-day deadline begins on the date of the filing of this written order.

3. All parties, including Henkel, Dial, and Arkema, were ordered (ECF Nos. 31, 47) to confer and submit an initial report of the parties' planning meeting, and the Court has reviewed those initial efforts. However, those projected dates were contingent

15

upon this Order. The Court will set, by separate order, an additional scheduling conference to thoroughly discuss the proposed schedule and issue an amended scheduling order accordingly.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas this 24th day of October 2016.

                                           s/ Gwynne E. Birzer
                                          GWYNNE E. BIRZER
                                          United States Magistrate Judge