**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| AK STEEL CORPORATION,<br><br>    **Plaintiff**<br><br>    v.<br><br>PAC OPERATING LIMITED PARTNERSHIP and PALMTREE ACQUISITION CORPORATION,<br><br>    **Defendants/Crossclaim Plaintiffs/ Third-Party Plaintiffs,**<br><br>    v.<br><br>CONTECH ENGINEERED SOLUTIONS, LLC, ARKEMA, INC., HENKEL CORPORATION, and DIAL CORPORATION,<br><br>    **Third-Party Defendants** | Case No. 2:15-CV-09260-CM-GEB |

**MEMORANDUM AND ORDER**

This matter is before the court on third-party defendant Henkel Corporation's (defendant) motion to dismiss third-party plaintiff PAC Operating Limited Partnership and Palmtree Acquisition Corporation's (collectively, plaintiff) complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). (Doc. 68.) For the reasons set forth below, the court denies defendant's motion to dismiss for lack of personal jurisdiction.

**I.    Factual Background**

Viewed in the light most favorable to plaintiff, the complaint and the record evidence are summarized as follows:

AK Steel Corporation (AK Steel) filed suit against plaintiff under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA") for environmental

-1-

response costs associated with the property 2707 Northeast Seward Avenue in Topeka, Kansas (the Site). AK Steel alleges that plaintiff's predecessor owned the Site and leased it to Turco Products, Inc. (Old Turco) from January 1, 1955 to January 1, 1958, and that Old Turco's operations contaminated the Site. Old Turco allegedly manufactured emulsion cleaner used by the United States Air Force to clean aircraft, and may have also repackaged paint removers for use by the Air Force. AK Steel also alleges that Old Turco's operations contaminated the Site.

Old Turco merged with Purex Corporation on December 31, 1960. Purex Industries, Inc. acquired Purex Corporation and became incorporated in Delaware in 1978. In 1985, Pennwalt Corporation purchased Purex Industries. Pennwalt changed its name to Atochem North America in 1989, then became Elf Atochem in 1992, before finally changing its name to Atofina Chemicals, Inc. ("Atofina") in 2000. In 2001, defendant entered into an Asset Purchase and Sale Agreement with Atofina where defendant acquired Atofina's metals and aviation business. Defendant also acquired certain assets from an Atofina subsidiary called Turco Products, Inc. (New Turco). New Turco was incorporated in Delaware in 1985. Defendant acquired the trademark and name of New Turco, but Atofina retained ownership of the subsidiary.

Plaintiff filed this third-party complaint against defendant pursuant to Section 113(f) of CERCLA, seeking contribution for any environmental response costs or damages adjudged against them. (Doc. 26) Plaintiff alleges that defendant is liable under Section 113(f) as a successor corporation to Old Turco. Defendant brought a motion to strike plaintiff's third-party complaint under Rule 14(a)(1) of the Federal Rules of Civil Procedure on August 16, 2016. (Doc. 32.) Magistrate Judge Birzer denied that motion on October 24, 2016. (Doc. 63.) Defendant then filed this motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure. (Doc. 68.)

Defendant is a Delaware corporation formed on January 22, 1970, with its principal place of place of business in Connecticut. Defendant does not have an office, phone number, bank account, or mailing address in Kansas. Defendant does not own any real property in Kansas, and it does not have any employees in Kansas. Approximately 2% of defendant's annual sales are from Kansas. Pursuant to Kansas law, defendant is registered to conduct business in Kansas. Plaintiff is a Delaware corporation headquartered in California.

## II. Legal Standard

### A. Motions to Dismiss under Fed. R. Civ. P. 12(b)(2)

A defendant may assert a pre-answer personal jurisdictional defense by motion. Fed. R. Civ. P. 12(b)(2). Plaintiff bears the burden of establishing personal jurisdiction over each defendant. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). When, as here, the court exercises its discretion to decide defendant's dismissal motion without conducting an evidentiary hearing, plaintiff need only make a prima facie showing of personal jurisdiction. *Id.* at 1091. To do so, plaintiff may establish facts via affidavits or other written materials that, if true, would support asserting personal jurisdiction. *Id.* The court assumes the allegations in the complaint are true to the extent they are not controverted, and resolves all factual disputes in plaintiff's favor. *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011).

## III. Discussion – Personal Jurisdiction

Defendant argues the third-party complaint should be dismissed for lack of personal jurisdiction. In analyzing personal jurisdiction, the district court must determine: (1) whether the defendant's conduct falls within the forum state's long-arm statute, and (2) whether the exercise of personal jurisdiction over the defendant satisfies the constitutional guarantee of due process. *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006). Because Kansas construes its long-arm statute to

the same limits allowed by federal due process, the court proceeds directly to the constitutional due process inquiry. *OMI Holdings*, 149 F.3d at 1090; Kan. Stat. Ann. § 60-308(b)(1)(L)-(b)(2). Analyzing due process is a two-step process. First, the court must find that the defendant has "minimum contacts" with the forum state such that the defendant "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 287 (1980). Second, the defendant's contacts with the forum must be such "that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987).

### A. Minimum Contacts

The court initially turns to the minimum contacts requirement. Plaintiff may satisfy the minimum contacts requirement in two ways: general and specific jurisdiction. A court taking general or all-purpose jurisdiction may hear all claims against a nonresident corporation if the corporation's affiliations with the forum state are so "continuous and systematic" as to render them essentially at home. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citing *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 362 U.S. 310, 317 (1945)). A court exercising specific jurisdiction may only hear claims arising out of the defendant's forum-related activities, so long as the defendant purposefully directs its activities at residents of the forum state. *OMI Holdings*, 149 F.3d at 1091 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Plaintiff argues that this court has both specific and general jurisdiction over defendant. First, plaintiff argues that the acts of defendant's predecessor corporation Old Turco establish the minimum contacts necessary for specific jurisdiction. Second, plaintiff argues that defendant consented to general jurisdiction when it registered to do business in Kansas. Defendant argues that it is not a liable successor to Old Turco, and therefore lacks the minimum contacts necessary for specific jurisdiction.

Defendant also argues that jurisdictional consent is no longer valid following the Supreme Court's *Daimler* decision, and that applying the Kansas registration statute in this case violates the dormant Commerce Clause.

### 1. Specific Jurisdiction

Plaintiff first argues that the court may exercise specific jurisdiction. A court may exercise specific jurisdiction where the suit arises out of or relates to the defendant's contacts with the forum. *Bristol-Myers Squibb Co. v. Superior Court of Cal., S.F. Cnty.*, 137 S. Ct. 1773, 1780 (2017). Plaintiff alleges that this suit arises out of Old Turco's Kansas contacts, which the court may attribute to defendant as a successor corporation. The court may impute a predecessor's contacts to a successor if forum law would hold the successor liable for the actions of its predecessor. *Williams v. Bowman Livestock Equip. Co.*, 927 F.2d 1128, 1132 (10th Cir. 1991). Kansas generally does not hold successor corporations liable for the actions of a predecessor, although liability may arise where a successor is a mere continuation of a predecessor. *Comstock v. Great Lakes Distrib. Co.,* 496 P.2d 1308, 1311 (1972). The mere continuation exception applies if, despite business transformations, the successor corporation is substantially the same as the predecessor corporation. *Stratton v. Garvey Int'l., Inc*., 676 P.2d 1290, 1299 (Kan. Ct. App. 1984).

Kansas courts consider several factors when determining whether a corporation is substantially the same as a predecessor corporation. The most significant of these factors is the existence of a common identity of officers and shareholders in both predecessor and successor entities. *Id.* at 1298. Even resolving all factual disputes in plaintiff's favor, plaintiff does not show any evidence of a common identity of officers or shareholders between Old Turco and defendant. The absence of a common identity weighs heavily against a finding of mere continuation because this factor is the only factor identified in Kansas cases as being particularly significant. Plaintiff does not show the presence

of any other combination of factors which together outweigh the absence of a common identity of officers and shareholders. Therefore, plaintiff has not made a prima facie case showing that defendant is not a mere continuation of Old Turco and the general rule of successor nonliability applies. Because plaintiff has not shown that defendant is a liable successor to Old Turco, the court lacks the minimum contacts necessary for specific jurisdiction.

### 2. General Jurisdiction

Plaintiff next argues that the court may exercise general jurisdiction over defendant. A court exercising general jurisdiction may hear any and all claims against a nonresident corporation, provided that its affiliations with the forum state are so constant and pervasive that they render the corporation essentially at home. *Daimler AG v. Bauman*, 134 S. Ct. 746, 751 (2014) (citing *Goodyear*, 564 U.S. at 919). Absent exceptional circumstances, a corporation is only at home in its state of incorporation and principal place of business. *Daimler*, 134 S. Ct. at 760–61 (citing *Goodyear*, 564 U.S. at 924). Here, defendant is a Delaware corporation with its principal place of business in Connecticut. Defendant is therefore not at home in Kansas. Plaintiff argues that defendant nonetheless consented to general jurisdiction away from home by registering to do business in Kansas. Defendant argues that establishing general jurisdiction through a business registration consent statute is inconsistent with the Supreme Court's holding in *Daimler*, and violates the dormant Commerce Clause.

#### a) Jurisdictional Consent

The court first considers plaintiff's argument that defendant consented to general jurisdiction by registering to do business in Kansas. The Supreme Court discussed consent jurisdiction in *Pennsylvania Fire Ins. Co. v. Gold Issue Min. & Mill. Co.*, a case involving Missouri's business registration statute. 243 U.S. 93, 95 (1917). The statute provided that all nonresident corporations must designate an instate agent for service of process and consent to valid service upon that agent. *Id.*

at 94–95. The Court held that Missouri courts may exercise general jurisdiction over the defendant because it voluntarily registered and appointed a service agent, thereby consenting to jurisdiction and taking "the risk of the interpretation that may be put upon [the state registration statute] by the courts." *Id.* at 96. Under *Pennsylvania Fire* then, a corporate defendant may consent to general jurisdiction by registering to do business in a state.

Kansas has a business registration statute which the Kansas Supreme Court has interpreted as establishing consent to general jurisdiction. *See* Kan. Stat. Ann. § 17-7931; *Merriam v. Crompton Corp.*, 146 F.3d 162, 175–77 (Kan. 2006). Defendant argues that the court's interpretation is no longer valid because the Supreme Court's recent *Daimler* decision implicitly overturned *Pennsylvania Fire*'s sanctioning of consent jurisdiction. Upon review of *Daimler*, this court disagrees. While the Court may have narrowed the scope of general jurisdiction in *Daimler*, it did not explicitly overturn *Pennsylvania Fire*.

This court recently considered the continued validity of consent jurisdiction after *Daimler* in *In re Syngenta AG MIR 162 Corn Litig.* 14-MD-2591-JWL, 2016 WL 1047996 (D. Kan. Mar. 11, 2016) [hereinafter, *Syngenta I*] As in this case, the plaintiff relied on the defendant's business registration in Kansas as the sole basis for establishing general jurisdiction. *Id.* at *1. The defendant argued that registration no longer establishes consent to general jurisdiction in forums other than a corporation's state of incorporation or principle place of business because *Daimler* held that those forums are where a corporation is at home. *Id.* at *2. The court held that although *Daimler* limited the scope of general jurisdiction, *Daimler* did not expressly overturn precedent sanctioning jurisdictional consent by registration. *Id.* The court therefore denied the defendant's motion to dismiss for lack of personal jurisdiction on those grounds. *Id.* at *4.

Although not bound by *Syngenta I*, the court nevertheless agrees with its holding. *Daimler* undoubtedly narrowed the scope of general jurisdiction, but it did not overturn *Pennsylvania Fire*. *Daimler*'s sole mention of consent cites a prior Supreme Court decision as the "textbook case of general jurisdiction appropriately exercised over a foreign corporation *that has not consented to suit in the forum*." 134 S. Ct. at 755–56 (emphasis added) (quoting *Goodyear*, 564 U.S. at 928)). As noted in *Syngenta I*, the Court's sole mention of consent in *Daimler* distinguishes "general jurisdiction jurisprudence from instances of consent to suit, thereby undermining any argument that the Court intended to speak to the issue of consent in discussing general jurisdiction in that case." 2016 WL 1047996, at *2. *Daimler* does not mention *Pennsylvania Fire*, or overturn its authorization of consent by registration. Defendant cites no other authority overturning its holding, and *Pennsylvania* therefore binds the court even after *Daimler*.

Until and unless the Supreme Court resolves the inconsistency between its intent to narrow the scope of general jurisdiction and its implicit sanctioning of consent jurisdiction, the court may continue taking general jurisdiction where a nonresident corporation consents to suit away from home by registering to do business in a state. Defendant registered to do business in Kansas, a state which interprets its statute as establishing general jurisdiction. Thus, defendant consented to general jurisdiction when it registered to do business in Kansas.

### b) Dormant Commerce Clause

Defendant next argues that even if the Kansas registration statute establishes general jurisdiction by consent, the court still does not have jurisdiction over the claim because the statute violates the dormant Commerce Clause. The Commerce Clause affirmatively grants Congress the authority to regulate interstate commerce. U.S. Const. art. I, § 8, cl. 3. The Commerce Clause also contains a negative or 'dormant' denial of states' authority to enact laws discriminating against or

burdening the flow of interstate commerce without Congressional approval. *Oregon Waste Sys., Inc. v. Dep't of Envtl. Quality of State of Or.*, 511 U.S. 93, 98 (1994). Discriminatory laws are those which treat in-state and out-of-state economic interests differently, to the benefit of the former and the burden of the latter. *Id.* at 99. A law may be discriminatory either on its face or in practical effect. *See Maine v. Taylor*, 477 U.S. 131, 138 (quoting *Hughes v. Oklahoma*, 441 U.S. 322, 336 (1979)). The burden of showing discrimination rests on the party challenging the validity of the state law. *Direct Marketing Ass'n v. Brohl*, 814 F.3d 1129, 1140 (10th Cir. 2016) (quoting *Hughes*, 441 U.S. at 336 (1979)). If the challenging party meets its burden, then the state law is virtually per se invalid and survives only if it "advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives." *Oregon Waste*, 511 U.S. at 100–01.

Here, defendant argues that the Kansas registration statute violates the dormant Commerce Clause, and therefore bears the burden of showing discrimination. On its face, the Kansas registration statute does not distinguish between in-state and out-of-state economic interests. Instead, the statute requires that all corporations doing business in Kansas register and consent to general jurisdiction. Accordingly, the court must determine whether the statute discriminates in practical effect against interstate commerce.

A facially neutral state law may still violate the dormant Commerce Clause when its effect is discriminatory. *See Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 350–53 (1977). The Supreme Court's practical effects cases are silent as to what specific showing is necessary to prove discrimination; however, the party claiming discrimination carries the burden of putting on significantly probative, and not merely colorable evidence of a discriminatory effect on interstate commerce. *Kleinsmith v. Shurtleff*, 571 F.3d 1033, 1040 (10th Cir. 2009) (citing *Cherry Hill Vineyard, LLC v. Baldacci*, 505 F.3d 28, 36 (1st Cir. 2007)). The evidence should show how the state law both

favors local economic actors, and burdens out-of-state actors. *Kleinsmith*, 571 F.3d at 1041. Defendant relies on two Supreme Court decisions which purportedly show the discriminatory effects of the Kansas registration statute.

Defendant first relies on *Davis v. Farmers' Co-op. Equity Co.*, 262 U.S. 312 (1923), where the Supreme Court sustained a dormant Commerce Clause objection to Minnesota's registration statute. In *Davis*, a Kansas plaintiff brought suit against a Kansas defendant in Minnesota for a claim arising outside Minnesota. *Id.* at 314. The plaintiff sought general jurisdiction based on the defendant's compliance with Minnesota's registration statute, which Minnesota courts interpreted as submitting nonresident corporate defendants to general jurisdiction. *Id.* at 314–15. The Supreme Court held that the statute unreasonably burdened interstate commerce when applied to a nonresident plaintiff bringing a cause of action unrelated to activities in Minnesota against a nonresident defendant. *Id.* at 317. Because the statute's effects on interstate commerce were discriminatory, the statute was per se invalid and the Court dismissed the claim for lack of personal jurisdiction. *Id.* at 318.

The *Davis* Court found specific evidence of the Minnesota statue's discriminatory effects when applied to a nonresident defendant for a claim that did not relate in any way to activity in Minnesota. The Court noted the significant number of similar claims filed by nonresident plaintiffs in Minnesota courts, the aggregate damages sought in those cases, and the resulting business costs in having to transport employees and resources away from home and into foreign courts. *Id.* at 315–16. These costs disrupted the defendant's efficient business operations, and therefore imposed a heavy burden on interstate commerce. *Id.* The Court limited the statute's discriminatory effect only to the facts of *Davis*, where the cause of action had no relation to any activity in Minnesota. *See Int'l Mill. Co. v. Columbia Transp. Co.*, 292 U.S. 511, 517 (1934).

Here, the court finds no evidence of the Kansas statute's specific discriminatory effect when applied to this nonresident defendant for a claim relating to activity in Kansas. Defendant does not provide any specific evidence, similar to the judicially-noticed facts in *Davis*, of an increased number of CERCLA contribution claims filed by nonresident plaintiffs against nonresident corporate defendants in Kansas courts. Whereas the claim in *Davis* did not relate to activity in Minnesota, this claim does relate to activity in Kansas. AK Steel sued plaintiff for environmental response costs incurred on Kansas property, and plaintiff then brought this third-party contribution claim against defendant for costs associated with the same property. This is not a case like *Davis*, where Minnesota had no interest in deciding a dispute between nonresident parties on a claim unrelated to the activities of those parties in Minnesota. This is instead a case where Kansas has an interest deciding a local environmental response cost dispute and in providing nonresident plaintiffs injured within its borders a forum to resolve disputes related to the parties' local activity. *Davis* does not support a finding of discriminatory effects where, as here, the cause of action arose in Kansas and relates to the local activity of nonresident parties.

Defendant next relies on *Int'l Milling*, where the Supreme Court rejected a dormant Commerce Clause objection to general jurisdiction in Minnesota. 292 U.S. 511. In *Int'l Milling*, a resident plaintiff sued a nonresident defendant in Minnesota for damaging the plaintiff's cargo during transportation on a ship owned by the defendant. *Id.* at 512. The cargo damage did not occur in Minnesota. *Id.* at 515. On a later voyage, the same ship that transported plaintiff's cargo docked in a Minnesota port during its regular course of business. *Id.* at 516. The plaintiff served the ship's designated officer with an attachment writ containing a negligence claim relating to the defendant's transportation of the plaintiff's cargo. *Id.* The defendant argued that taking general jurisdiction in Minnesota violated the dormant Commerce Clause. *Id.* at 515. To determine whether Minnesota

courts asserting general jurisdiction discriminated against interstate commerce, the Court looked for a relationship between the residency or activities of the plaintiff and the chosen forum. *Id.* at 518. Although not controlling, the plaintiff's residency was a "fact of high significance" to the Court. *Id.* at 520. The Court also considered the nature of the defendant's long-standing business activities in Minnesota. *Id.* The plaintiff's residency together with the defendant's forum activities established a relationship with Minnesota sufficient to establish general jurisdiction. *Id.*

The Court held that applying the Minnesota attachment statute to establish general jurisdiction did not discriminate in practical effect against interstate commerce given the defendant's significant business activity in Minnesota and the plaintiff's residency in Minnesota. *Id.* The defendant's regular intrastate business activity rendered the defendant familiar and "chargeable with knowledge of the attachment laws of Minnesota," and therefore mitigated any burden on the defendant. *Id.* The defendant, by bringing its ship into Minnesota, subjected itself to suit against a resident plaintiff "who could not with equal convenience or facility have sued it anywhere else." *Id.* at 520–21. This reasoning confirmed an intention to limit *Davis* to its facts, and the Court upheld taking general jurisdiction in Minnesota. *Id.* at 517.

Here, defendant misstates *Int'l Milling* as requiring at least a nonresident plaintiff to avoid practical effects discrimination. This would mean Kansas may not take general jurisdiction over defendant because plaintiff is not a Kansas resident. However, the Court did not hold that the presence of a resident plaintiff necessarily avoids discriminatory effects in every case, but instead held that the presence of a resident plaintiff sufficiently avoided discriminatory effects in the particular case before the Court. *Id.* at 519–20 (noting that the Court did "not hold that the residence of the suitor will fix the proper forum without reference to other considerations"). The Court valued plaintiff's residency highly because it demonstrated proof of a relationship between the activities of the plaintiff and the

locality "so permanent and intimate as to relieve it of the opprobrium of an impertinent intruder when it went into the local courts." *Id.* at 519. This plaintiff is not a Kansas resident, but has nonetheless demonstrated a sufficient relationship with Kansas based on its local activities. Plaintiff's successor owned and operated the Kansas property giving rise to this suit, and allegedly leased it to Old Turco. AK Steel brought suit based on plaintiff's local activity, and that same local activity gave rise to plaintiff's third-party contribution claim against defendant. Under the proper application of *Int'l Milling,* plaintiff's local activities demonstrate a relationship with Kansas sufficient to establish general jurisdiction without discriminating against interstate commerce.

Under *Int'l Milling*, defendant's consent also mitigates any discriminatory burden of the Kansas registration statute. The defendant in *Int'l Milling* conducted regular business in Minnesota, and the Court therefore charged the defendant with knowledge of Minnesota's attachment laws and the consequences of conducting business there. Defendant in this case is also chargeable with knowledge of the business laws of Kansas. Defendant designated an agent for service of process in compliance with the Kansas registration statute and accepted the risk that a party might serve a summons upon that agent and force defendant to defend a lawsuit away from home for claims unrelated to defendant's activities in Kansas. Therefore, the court finds that defendant's local mitigates any discriminatory effects of applying the Kansas registration statue to furnish general jurisdiction.

The court lastly considers *In re Syngenta AG MIR 162 Corn Litig.*, 14-MD-2591-JWL, 2016 WL 1047996 (D. Kan. May 17, 2016) [hereinafter, *Syngenta II*]. In *Syngenta II*, the court dismissed the claims of 24 nonresident plaintiffs who sought general jurisdiction based on the nonresident defendants' compliance with the Kansas registration statute. *Id.* at *6. The court held that the Kansas registration statute discriminated in practical effect against interstate commerce when applied to the

nonresident plaintiffs' claims against nonresident defendants, and was therefore an invalid means of obtaining general jurisdiction. *Id.* at *5.

The facts of the present case materially differ from those in *Syngenta II*. *Syngenta II* relied on the judicially-noticed commerce burden in *Davis*, and referenced earlier in this order, in finding discriminatory effects on interstate commerce. *Id.* Those discriminatory effects apply narrowly to *Syngenta II's* and *Davis*' facts, where nonresident plaintiffs sue in jurisdictions remote from those in which the cause of action arises. Here, nonresident plaintiff brought suit in the jurisdiction where the cause of action arose. Plaintiff's local activity gave rise to AK Steel's complaint and plaintiff's third-party contribution claim. This is not a case of a claim unrelated to activities in Kansas, and *Davis* and *Syngenta II* therefore do not apply. For these reasons, *Syngenta II* does not persuade the court that applying the Kansas registration statute here would discriminate in practical effect against interstate commerce.

Having considered all of defendant's arguments on the issue, the court finds that applying the Kansas business registration statute to establish defendant's consent to general jurisdiction in Kansas does not discriminate in practical effect against interstate commerce. The materials cited by defendant do not constitute significantly probative evidence of the statute's favoring of in-state economic actors and burdening of out-of-state economic actors. Because the Kansas registration statute neither discriminates on its face or in practical effect against interstate commerce, the statute survives defendant's dormant Commerce Clause challenge. Therefore, the court finds that plaintiff has established a prima facie showing of the minimum contacts necessary for general jurisdiction. Because defendant's local activity satisfies the minimum contacts requirement, the court proceeds to the fair play and substantial justice element of the due process personal jurisdiction analysis.

### B. Fair Play and Substantial Justice

Because defendant's Kansas contacts satisfy the minimum contacts requirement, the court must also determine whether exercising personal jurisdiction over defendant offends traditional notions of fair play and substantial justice. *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987). At this point, the burden shifts to defendant to show that the court's exercise of personal jurisdiction would be unreasonable. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1080 (10th Cir. 2008). Determining whether jurisdiction is reasonable under the circumstances involves balancing (1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Asahi*, 480 U.S. at 113 (citing *Woodson*, 444 U.S. 286, 292 (1980)).

Defendant does not show that litigating this case in the District of Kansas is fundamentally unfair. The court previously discussed the burden on defendant on defending in Kansas. Defendant, chargeable with the Kansas business laws, registered and consented to general jurisdiction in Kansas fully aware of the risk of service in Kansas. Defendant alleges no additional evidence that litigating in Kansas will burden defendant. Kansas additionally has an interest in resolving this local dispute involving environmental response contamination and response costs in Kansas. Plaintiff also has an interest in receiving convenient and effect relief in Kansas, because plaintiff would otherwise have to file a separate third-party contribution claim elsewhere. Litigating this case in the District of Kansas represents the most efficient use of the judicial system's resources, and will avoid duplicative claims in other jurisdictions whose local activity in no way relates to this case. Balancing all the *Asahi* factors together, jurisdiction in the District of Kansas is reasonable under the circumstances. For these reasons, jurisdiction in Kansas does not offend traditional notions of fair play and substantial justice.

The court finds that defendant has sufficient minimum contacts with Kansas to support general jurisdiction, and that exercising general jurisdiction over defendant in the District of Kansas would not offend traditional notions of fair play and substantial justice. Accordingly, the court will not dismiss plaintiff's third-party complaint for lack of personal jurisdiction over defendant. Further, because the court finds there is general jurisdiction, plaintiff's waiver argument and its request for jurisdictional discovery are moot.

**IT IS THEREFORE ORDERED** that Henkel's Motion to Dismiss, for Lack of Jurisdiction (Doc. 68.) is denied.

Dated August 3, 2017, at Kansas City, Kansas.

       s/ Carlos Murguia
       **CARLOS MURGUIA**
       **United States District Judge**